UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

AMADOU BARRY and GUNGOR AKCELIK on behalf of themselves and all others similarly situated,

                                Plaintiffs,

- against -

S.E.B. SERVICE OF NEW YORK, INC., and/or ROBERT DINOZZI and/or any other entities affiliated with or controlled by S.E.B. SERVICE OF NEW YORK, INC. and/or ROBERT DINOZZI

                              Defendants.

11-cv-5089 (MDG)

---

## JOINT STIPULATION OF SETTLEMENT AND RELEASE AGREEMENT

This Joint Stipulation of Settlement and Release Agreement ("Agreement") is entered into by and between (1) Amadou Barry and Gungor Akcelik ( "Named Plaintiffs"), (2) Class Counsel (hereinafter defined) on behalf of themselves and all FLSA Claimants, (3) Class Members, (4) S.E.B. Service of New York, Inc. and/or any other entities affiliated with or controlled by S.E.B. Service of New York, Inc. (including but not limited to Safe Environment Business Solutions, Inc., S.E.B. Services of New Jersey, Inc., S.E.B. Services of Massachusetts, Inc., S.E.B. Services of Illinois, Inc., Safe Environment Business Solutions of Ohio, Inc., Security Enforcement Bureau, Inc.), and (5) Robert Dinozzi (SEB Services of New York, Inc. and Robert Dinozzi are collectively referred to as "Defendants" or "SEB").

## 1.    RECITALS AND BACKGROUND

WHEREAS, the Named Plaintiffs filed a Complaint against Defendants under the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* ("FLSA") and New York and New Jersey's State Labor Laws claiming that Defendants failed to pay minimum and overtime wages;

WHEREAS, the FLSA collective was certified pursuant to 29 U.S.C. § 216(b) with respect to all uniform and undercover guards employed by Defendants from May 7, 2009 through May 16, 2014;

WHEREAS, the Parties have engaged in extensive formal and informal discovery during the course of the Litigation;

WHEREAS, the Parties have engaged in numerous and protracted settlement negotiations to arrive at the settlement described herein;

WHEREAS, the Parties participated in one mediation session with Patrick McKenna on June 26, 2014, at the Eastern District of New York Courthouse located in Brooklyn, New York,

1

in addition to two Settlement Conferences before Magistrate Judge Go on March 12, 2015 and April 8, 2015;

WHEREAS, Defendants deny and continue to deny all of the allegations made by Plaintiffs in the Litigation and has denied and continues to deny that it is liable or owes damages to anyone with respect to the alleged facts or causes of action asserted in the Litigation. Nonetheless, without admitting or conceding any liability or damages whatsoever, Defendants have agreed to settle the Litigation on the terms and conditions set forth in this Agreement, to avoid the burden, expense, and uncertainty of continuing the Litigation;

WHEREAS, the purpose of this Agreement is to settle fully and finally all State Law Claims and FLSA Claims, between the Named Plaintiffs, the Class Members, the FLSA Claimants, and Defendant, including all claims asserted in the Litigation in order to avoid the burden, expense, and uncertainty of continuing the Litigation; and

WHEREAS, Class Counsel analyzed and evaluated the merits of the claims made against Defendants and the impact of this Agreement on Named Plaintiffs, the FLSA Claimants and the Class Members and based upon their analysis and evaluation of a number of factors, and recognizing the substantial risks of continued litigation, including the possibility that the Litigation, if not settled now, might not result in any recovery whatsoever, or might result in a recovery that is less favorable and that would not occur for several years, Class Counsel and the Named Plaintiffs are satisfied that the terms and conditions of this Agreement are fair, reasonable and adequate and that this Agreement is in the best interest of the Named Plaintiffs, the FLSA Claimants and the Class Members.

NOW THEREFORE, in consideration of the mutual covenants and promises set forth in this Agreement, as well as the good and valuable consideration provided for herein, the Parties hereto agree to a full and complete settlement of the Litigation on the following terms and conditions:

1.     **DEFINITIONS**

The defined terms set forth in this Agreement have the meanings ascribed to them below.

1.1    **Action or Litigation.** "Action" or "Litigation" shall mean the lawsuit titled *Barry et al. v. S.E.B. Service of New York, Inc. et al.*, Case No. 11-CV-5089 (SLT) (MDG) (E.D.N.Y. filed October 19, 2011).

1.2    **Agreement.** "Agreement" means this Joint Stipulation of Settlement and Release Agreement.

1.3    **Claim Bar Date.** "Claim Bar Date" shall mean the last date for a Class Member to perform one of the following acts as further defined in this Agreement: (i) file a Claim Form; (ii) opt-out of the Litigation, or (iii) file a timely objection to the proposed settlement, which date shall be no later than forty-five (45) days after the initial mailing of Notice of Proposed Settlement of Class Action Lawsuit. To the extent that a Notice is returned without a forwarding address, the Claims Administrator will conduct a skip-trace to locate the Class

2



Member, and re-mail the Notice within five (5) business days of receipt of the Notice without a forwarding address. A Class Member whose initial Notice is returned without a forwarding address shall have until the Claim Bar Date or fifteen days from the date of re-mailing to return the Claim Form, whichever is later.

1.4     **Claim Form.** "Claim Form" shall mean the form, a copy of which is attached to the Notice of Proposed Settlement of Class Action Lawsuit, that the Class Members must sign and return post-marked by the Claim Bar Date in the form attached hereto as Exhibit F. The Claim Form must be timely filed with the Claims Administrator for a Class Member to be eligible to receive his/her distribution from the Settlement Fund Account.

1.5     **Claims Administrator.** "Claims Administrator" shall mean the entity selected by Class Counsel to provide notice to the Class and distribute payment of the settlement to Class Members. The Claims Administrator is FRG Information Systems, Inc.

1.6     **Class or Class Member(s).** "Class" or "Class Members" shall be defined as all present and former persons employed as undercover guards by Defendants at any time between October 19, 2005 through May 16, 2014 in New York or New Jersey. Exhibit A is a list of all Class Members.

1.7     **Class Claimant.** "Class Claimant" shall mean a Class Member who files a Claim Form and Release, post-marked on or before the Claim Bar Date, electing to participate in the settlement of this Litigation. For Claim Forms submitted without a post-mark, such Claim Forms must be received by the Claims Administrator on or before the Claim Bar Date. Class Claimants do not include FLSA Claimants as defined in section 1.19 or Named Plaintiffs as defined in section 1.22.

1.8     **Class Counsel or Plaintiffs' Counsel.** "Class Counsel" or "Plaintiffs' Counsel" shall mean Lloyd Ambinder and Suzanne Leeds Klein of Virginia & Ambinder, LLP, 40 Broad Street, 7th Floor, New York, New York 10004; and Jeffrey Brown and Michael Tompkins of Leeds Brown Law, P.C., One Old Country Road, Suite 347, Carle Place, New York 11514.

1.9     **Class Member List.** "Class Member List" shall mean a list of all Class Members, identified by: (i) name; (ii) last known address; (iii) job classification; (iv) dates of employment during the Relevant Time Period; (v) settlement amounts; (vi) social security number on file, contained in a confidential document that the Defendants have provided to Class Counsel, and Class Counsel has accepted. A condensed version of the Class Member List is attached hereto as Exhibit A.

1.10    **Court.** "Court" shall mean the United States District Court for the Eastern District of New York, the Honorable Marilyn D. Go, U.S.M.J. presiding. The parties consent to jurisdiction of the Magistrate Judge for settlement purposes, based on her knowledge of the settlement negotiations and factors that led to this settlement.

1.11    **Covered Period.** "Covered Period" shall mean the period from October 19, 2005 through the date of the Implementing Order.

3

**1.12   Days.** "Days" shall mean calendar days.

**1.13   Defendants.** "Defendants" shall mean S.E.B. Service of New York, Inc. and/or Robert Dinozzi and/or any other entities affiliated with or controlled by S.E.B. Service of New York and/or Robert Dinozzi (including but not limited to: Safe Environment Business Solutions, Inc., S.E.B. Services of New Jersey, Inc., S.E.B. Services of Massachusetts, Inc., S.E.B. Services of Illinois, Inc., Safe Environment Business Solutions of Ohio, Inc., Security Enforcement Bureau, Inc.).

**1.14   Defense Counsel.** "Defense Counsel" shall be Leo Kayser, III of Kayser & Redfern, LLP, 515 Madison Avenue, 31st Fl., New York, New York 10022.

**1.15   Effective; Effective Date.** "Effective" shall mean the occurrence of all of the following, and "Effective Date" shall be the date that all of the following have occurred:

    (A)   the Court has entered Judgment and ruled on the motions for awards of service payments to the Named Plaintiffs pursuant to Section 3.1(E) and for attorneys' fees and reasonable costs pursuant to Section 3.2; and

    (B)   the Judgment and the rulings on such motions have become Final. "Final" means the later of:

        (1)   31 days after the Court enters Judgment if no reconsideration or rehearing or appeal is sought;

        (2)   If rehearing or reconsideration is sought, after any and all avenues of rehearing or reconsideration have been exhausted and no further rehearing or reconsideration is permitted, and the time for seeking such review has expired, and the Judgment and rulings on service awards and attorneys' fees and reasonable costs have not been modified, amended or reversed in any way.

        (3)   If a notice of appeal is filed, the latest of the following, if applicable, has occurred: (1) any appeal from the Final Order has been finally dismissed; (2) the Final Order has been affirmed on appeal in a form substantially identical to the form of the Final Order entered by the Court; (3) the time to petition for review with respect to any appellate decision affirming the Final Order has expired; and (4) if a petition for review of an appellate decision is filed, the petition has been denied or dismissed, or, if granted, has resulted in affirmance of the Final Order in a form substantially identical to the form of the Final Order entered by the Court.

**1.16   Fairness Hearing.** "Fairness Hearing" shall mean the hearing held before the Honorable Marilyn D. Go, U.S.M.J., relating to the Motion for Final Approval.

**1.17   Fee Award.** "Fee Award" shall mean the Court-approved attorneys' fees, costs and expenses as described in Section 3.2.

4

**1.18**    **Final Order.** "Final Order" shall mean the order entered by the Court after the Fairness Hearing or the Motion for Final Approval approving the terms and conditions of this Agreement, distribution of the settlement payments, service awards to the Named Plaintiffs, approval of professional fees and costs, and dismissal of this action.

**1.19**    **FLSA Claimants.** "FLSA Claimants" shall mean the individuals who worked for Defendants who have already filed timely Consent to Join forms pursuant to 29 U.S.C. § 216(b). A list of the FLSA Claimants is attached hereto as Exhibit B. FLSA Claimants do not have to file a Claim Form to participate in this settlement.

**1.20**    **FLSA Claims.** "FLSA Claims" shall mean all federal wage and hour claims that could have been asserted pursuant to the Fair Labor Standards Act by or on behalf of the FLSA Claimants. Released FLSA Claims include, but are not limited to, all claims under federal law for unpaid minimum or overtime wages, and any other related federal wage and hour claims, all 'derivative benefit claims' (*defined as* claims for benefits resulting from the alleged failure to pay overtime or wages, both ERISA and non-ERISA benefits), interest on such claims, and attorneys' fees, expenses and costs related to such claims.

**1.21**    **Implementing Order.** "Implementing Order" shall mean the Order entered by the Court preliminarily approving, *inter alia*, the terms and conditions of this Agreement, the manner and timing of providing notice to the Class, and the time period for opt-outs and objections. A proposed Implementing Order is attached hereto as Exhibit G.

**1.22**    **Named Plaintiffs.** "Named Plaintiffs" shall mean Amadou Barry and Gungor Akcelik, or any and all representatives, heirs, administrators, executors, beneficiaries, agents, and assigns of such individuals, as applicable and without limitation. The Named Plaintiffs shall be deemed Class Claimants and FLSA Claimants by executing this Agreement.

**1.23**    **Notice.** "Notice" shall mean the Court-approved Notice of Proposed Settlement of the FLSA Collective Action and Class Action attached hereto as Exhibits C and D, respectively, and including notice of an opportunity to opt-out and/or object to the proposed settlement.

**1.24**    **Parties.** "Parties" shall refer to the Named Plaintiffs, FLSA Claimants, the Class Members and Defendants collectively.

**1.25**    **Intentionally Left Blank.**

**1.26**    **Intentionally Left Blank.**

**1.27**    **Settlement Checks.** "Settlement Checks" shall mean the checks issued to the Named Plaintiffs, FLSA Claimants and Class Claimants from the Settlement Fund Account as calculated by Class Counsel in accordance with this Agreement.

**1.28**    **Settlement Fund Account.** "Settlement Fund Account" shall mean the FDIC insured account created by the Claims Administrator.

5

1.29 **Settlement Fund.** "Settlement Fund" shall mean the maximum aggregate amount Defendants shall pay pursuant to this Agreement, which is the gross sum of $369,227.50. Under no circumstances shall the Settlement Fund exceed $369,227.50, inclusive of the amounts already distributed to Class Members. Defendants shall fund the Settlement Fund under the terms of paragraph 2.12 below.

1.30 **State Law Claims.** "State Law Claims" shall mean all wage and hour claims that could have been asserted under New York or New Jersey State law by or on behalf of the Class, excluding Class Members who opt-out of the settlement. State Law Claims do not include claims under the Fair Labor Standards Act. Released State Law Claims include, but are not limited to, all claims under state law for unpaid minimum or overtime wages, and any other related state law wage and hour claims, all 'derivative benefit claims' (*defined as* claims for benefits resulting from the alleged failure to pay overtime or wages under New York or New Jersey State law, both ERISA and non-ERISA benefits), interest on such claims, and attorneys' fees, expenses and costs related to such claims.

## 2. INITIAL PROCEDURAL ISSUES

2.1 **Binding Agreement.** This Agreement is a binding agreement and contains all material agreed-upon terms.

2.2 **State Law Settlement.** For purposes of settlement only, the Parties stipulate to include all Class Members possessing State Law Claims during the Covered Period into this Agreement.

2.3 **Retention of the Claims Administrator.** Class Counsel shall engage a Claims Administrator.

2.4 **Responsibilities of the Claims Administrator.** The Claims Administrator shall be responsible for:

    A.    preparing, printing and disseminating the Notice and Claim Form to the Class;

    B.    copying counsel for all Parties on material correspondence and promptly notifying all counsel for the Parties of any material requests or communications made by any Party;

    C.    promptly furnishing to counsel for the Parties copies of any Opt-out Statements, objections or other written or electronic communications from the Class which the Administrator receives;

    D.    filing with the Court any Opt-out Statements or written objections;

    E.    receiving, reviewing and stamping immediately upon receipt the Claim Forms submitted by the Class;

    F.    keeping track of Opt-out Statements including maintaining the original mailing envelope in which the request was mailed;

G.     ascertaining current address and addressee information for each Notice and Claim Form returned as undeliverable and the mailing of Notice and Claim Form;

H.     responding to inquiries of the Class regarding procedures for filing objections, Opt-out Statements, and Claim Forms;

I.     referring to Plaintiffs' Counsel all inquiries by the Class regarding matters not within the Claims Administrator's duties specified herein. However, Class Counsel shall not initiate any communication with any Class Member other than the Named Plaintiffs and FLSA Claimants, except in response to an inquiry forwarded by the Claims Administrator pursuant to this Paragraph;

J.     responding to inquiries from Class Counsel and Defense Counsel consistent with the Claims Administrator's duties specified herein;

K.     promptly apprising Class Counsel and Defense Counsel of the activities of the Claims Administrator;

L.     maintaining adequate records of its activities, including the dates of the mailing of Notice(s) and mailing and receipt of Claim Forms(s), returned mail and other communications and attempted written or electronic communications with the Class;

M.     setting up the Settlement Fund Account, and providing Defendants' counsel with timely written notice of instructions as to where to send Defendants' funding checks;

N.     such other tasks the Parties mutually agree.

In addition, on a rolling basis throughout the claims period, and no later than fifteen (15) days prior to the Fairness Hearing, the Claims Administrator shall certify jointly to Class Counsel and to Defense Counsel (a) a list of all Class Members who timely filed their Claim Forms; (b) a list of all Class Members who filed timely objections; (c) a list of all Class Members who did not file a Claim Form; and, (d) a list of all Class Members who requested to opt-out of the settlement at any time during the opt-out period. The Claims Administrator shall also provide counsel for the Parties with an updated address list for the Class. Throughout the period of claims administration, the Claims Administrator will provide reports to the Parties upon request by either Party, regarding the status of the mailing of the Notices and Claims Forms to the Class, and any other aspect of the claims administration process.

Class Counsel shall be responsible for overseeing and ensuring that the Claims Administrator complies with the terms of this contract.

2.5     **Responsibilities of Defendants.** Defendants shall be responsible for providing the Settlement Amount by check to the Claims Administrator and/or Class Counsel for the Settlement Fund Account. Class Counsel and/or the Claims Administrator shall establish

such Settlement Fund Account to be used for the distribution of all Settlement Checks to FLSA Claimants, Class Claimants, Class Counsel, and Named Plaintiffs.

A.   If the remaining amount from the Settlement Fund is insufficient to cover the administration costs, Defendants shall pay half of the uncovered administration costs of effectuating and distributing such Settlement Checks, not to exceed $5,000. Should such additional contribution be necessary, the Administrator shall provide an appropriate statement for services to all counsel for the parties. Plaintiffs' Counsel shall thereafter provide written notice with documentation to the Defendants, including proof of their own payment to the Administrator, as to what additional amount of administration costs remain outstanding. Defendants shall have 20 days in which to make such payment after written notice and appropriate documentation is received.

2.6   **Notice.** The Notice shall inform Class Members about this Settlement and shall also advise them of the opportunity to object to, opt-out of, or to file a Claim Form to obtain a Settlement Check pursuant to this Agreement, and/or to appear at the Fairness Hearing. Within thirty (30) days of the entry of the Implementing Order by the Court, the Claims Administrator shall mail to all Class Members, via First Class United States Mail, the Court–approved Notice of Proposed Class Action Settlement and personalized Claim Form. The Claims Administrator will take all *reasonable steps* to obtain the correct address of any Class Member for whom a Notice and Claim Form is returned by the post office as undeliverable, including one skip trace, and shall attempt a re-mailing to any Class Member for whom it obtains a more recent address. The Claims Administrator shall notify Class Counsel and Defense Counsel of any Notice and Claim Form sent to a Class Member that is returned as undeliverable after the first mailing, as well as any such Notice and Claim Form returned as undeliverable after any subsequent mailing(s) as set forth in this Agreement.

2.7   **Approval of the Implementing Order.**

(A)   Plaintiffs' Counsel shall apply to the Court for approval of the proposed Notice and Claim Form. The, proposed FLSA Collective Action Notice, Class Notice, FLSA Claimant Release, Class Claim Form, and Implementing Order approved by the Parties is annexed hereto and made a part of this agreement as Exhibits "C", "D", "E", "F" and "G" respectively.

(B)   The proposed Implementing Order shall seek the setting of a deadline of forty-five (45) days from the initial mailing of Notice and Claim Form to Class Members: (a) for Class Members to submit Claim Forms, (b) to file Opt-out Statements, and/or (c) to object to the settlement. The Proposed Implementing Order shall also seek to set a date for the Fairness Hearing for Final Approval of the Settlement which shall be no earlier than seventy-five (75) days following the date that the Court enters the proposed Implementing Order.

(C)   Class Counsel shall inform the Court of the intended process to obtain a "Final Order" that will, among other things: (1) approve the settlement as fair,

8

adequate and reasonable; (2) approve the proposed Notice to the Class; (3) incorporate the terms of the Release; (4) dismiss the Litigation; and (5) award Class Counsel's fees, expenses and costs.

(D) The Parties shall work together, diligently and in good faith, to obtain expeditiously an Implementing Order, Final Order, and dismissal in accordance with this Agreement with prejudice. Any disputes which arise between the Parties related to the Parties' efforts to obtain a Final Order, and dismissal with prejudice shall be submitted to this Court.

## 2.8    Notice and Claims Forms to Class

(A) Defense Counsel has provided Class Counsel with the FLSA Claimant and Class Member Lists, which Class Counsel has accepted. These lists shall be utilized for the sole purpose of mailing the Notice and administering the settlement hereunder. All information provided regarding the Class will be treated as confidential information by Class Counsel and the Claims Administrator. Said information will not be used by Class Counsel for any purpose other than to effectuate the terms of settlement.

(B) Class Members, other than the Named Plaintiffs and FLSA Claimants, will have forty-five (45) days from the date of initial mailing to return the Claim Form and become a Class Claimant. To be effective, a Claim Form must be post-marked, email, or faxed by the Court-authorized Claim Bar Date or, for Claim Forms without a postmark, must be received by the Claims Administrator on or by the Court-authorized Bar Date. To the extent that the envelope, fax or email does not contain a post-mark or sending date, the date that the Claims Administrator stamps the envelope or Claim Form 'received' shall apply.

(C) To the extent that a Notice is returned without a forwarding address, the Claims Administrator will conduct a skip-trace to locate the Class Member, and re-mail the Notice providing an additional 15 days to file a Claim Form via first class mail, which date shall be post-marked no later than fifteen (15) days after the original Claim Bar Date.

## 2.9    Opt-outs.

(A) The end of the time period to opt-out of the settlement ("Opt-out Period") shall be on or before the Claim Bar Date.

(B) Class Members who choose to opt-out of the settlement as set forth in this Agreement must mail via First Class United States Mail, postage prepaid, a written, signed statement to the Claims Administrator that states he or she is opting out of the settlement, and include his or her name, address, and telephone numbers and statement indicating his or her intention to opt-out such as: "I opt out of the SEB wage and hour settlement." ("Opt-out Statement"). To be effective, an Opt-out Statement must be post-marked or received by the Claims Administrator or Class Counsel by the Bar Date.

(C)     The Administrator will send a list of all Opt-out Statements to Class Counsel and Defense Counsel before the Fairness Hearing. The Administrator will retain the stamped originals of all Opt-out Statements and originals of all envelopes accompanying Opt-out Statements in its files until such time as the Administrator is relieved of its duties and responsibilities under this Agreement.

(D)     Any Class Member who does not submit an Opt-out Statement pursuant to this Agreement, will be deemed to have accepted the settlement and the terms of this Agreement, will be bound by the Final Order in this action, and have any State Law Claims released and dismissed. Other than Named Plaintiffs and FLSA Claimants, only those Class Members who timely complete and return a Claim Form postmarked or otherwise received by the Bar Date will be deemed authorized to participate in this settlement as a "Class Claimant."

(E)     For purposes of this agreement, the Named Plaintiffs and FLSA Claimants are not required to file a Claim Form to participate in the settlement, unless they opt-out in accordance with the terms of this agreement.

**2.10    Objections to Settlement.**

(A)     Objectors who wish to present objections to the proposed settlement at the Fairness Hearing must first do so in writing. To be effective, such statement must be mailed to the Claims Administrator via First-Class United States Mail post-marked or otherwise received by the Claim Bar Date. The Administrator shall stamp the date received on the original and send copies of each objection and supporting documents, to Class Counsel and Defense Counsel by email delivery no later than three (3) days after receipt of the objection.

(B)     An Objector also has the right to appear at the Fairness Hearing either in person or through counsel hired by the Objector. An Objector who wishes to appear at the Fairness Hearing must state his or her intention to do so in writing on his or her written objections at the time he or she submits his or her written objections. An Objector may withdraw his or her objections at any time. An Objector is a Class Member and an objection does not constitute the filing of an Opt-out Statement.

(C)     The Parties may file with the Court written responses to any filed objections no later than three (3) days before the Fairness Hearing.

**2.11    Fairness Hearing and Motion for Final Approval and Dismissal.**

At the Fairness Hearing, the Parties will request that the Court, among other things: (1) approve the Joint Stipulation of Settlement and Release Agreement as fair, reasonable, adequate, and binding on all Class Members who have not timely opted out of the settlement; (2) order the Administrator to distribute the Settlement Checks to the Named Plaintiffs, FLSA Claimants and Class Claimants pursuant to the funding and payment schedule set forth in Paragraph 2.12; (3) order the attorneys' fees, expenses and costs to be paid to Class Counsel out of the Settlement Fund Account pursuant to the funding and

10

payment schedule set forth in Paragraph 2.12; (4) (a) order the dismissal with prejudice of all State Law Claims by all Class Members who did not opt-out; (b) order the dismissal with prejudice of FLSA Claims and State Law Claims by all Class Claimants, FLSA Claimants and Named Plaintiffs; (5) order entry of Final Judgment in accordance with this Agreement; and (6) retain jurisdiction over the interpretation and implementation of this Agreement as well as any and all matters arising out of, or related to, the interpretation or implementation of this Agreement and of the settlement contemplated thereby.

2.12   **Funding of Settlement and Mailing of Settlement Checks.** Defendants shall fund the total sum owed to the FLSA Claimants ($102,597) within thirty (30) days after Final Approval of the FLSA Collective Settlement; Defendants shall fund the total sum owed to the Class Claimants, service awards, attorneys' fees and costs under this Agreement ($266,630.50), within thirty (30) days after the Final Effective Date into the Settlement Fund Account.

2.13   **Effect of Failure to Grant Final Approval.** In the event the Court fails to enter the Final Order in accordance with this Agreement, the Litigation will proceed as if no settlement had been attempted.

3.   **SETTLEMENT TERMS**

3.1   **Settlement Fund Computation and Allocations.** Individual Claimant's share of the Settlement Fund shall be computed as follows:

(A)   FLSA Claimants. For the period of May 7, 2009, through May 16, 2014, a potential fund of $58,987.00 was established for FLSA Claimants by: awarding an amount of thirty (30) minutes of unpaid wages for each week worked to compensate for alleged "off-the-clock" work, assuming an average of 20 weeks worked, at a partial overtime rate of $11.25 per hour, with an additional award of 50% liquidated damages. The potential fund amount of **$58,987.00** was apportioned among the FLSA Claimants by a combination of (i) determining a percentage based on the wages earned during their employment with SEB; and (ii) calculating amounts of potential damages based on an audit conducted of SEB's records. Based on these components, the amounts owed to FLSA Claimants range from $50.00 up to $2,035.99.

(B)   FLSA Claimants with New York Labor Law Claims. In addition to what will be received as an FLSA Claimant, opt-in Plaintiffs who performed work in New York are eligible to receive additional monies from a potential fund of **$43,610.00**, to account for the entire New York statute of limitations, from October 19, 2005, through May 16, 2014. The potential fund amount of $43,610.00 was apportioned among the FLSA Claimants with New York claims by: (i) determining amounts of potential damages based on an audit conducted of SEB's records (ii) multiplying that amount by 2 to account for 100% liquidated damages, (iii) adding an additional percentage to the total amount to account for any deficiencies in the calculations; and (iv) determining a percentage based on the total wages earned during their

11

employment with SEB. Based on these components, the amounts owed to FLSA Claimants with New York claims range from $99.00 up to $9,654.00.

(C)    Class Claimants. For the period of October 19, 2005, through May 16, 2014, Class Claimants employed as undercover guards in New York and New Jersey are entitled to receive a portion of the potential fund of **$56,630.50**. This amount for Class Claimants was established by: (i) conducting an audit of SEB's records (including schedules, payroll documents, timesheets, etc.) (ii) multiplying the amount of calculated exposure by two to account for liquidated damages (iii) adding an additional percentage to the total amount to account for any deficiencies in the calculations; and (iv) determining a percentage based on total wages earned during their employment with SEB. Based on these components, the amounts owed to Class Claimants employed as undercover guards range from $81.25 up to $11,520.00. Defendants will be credited for any amounts already distributed and accepted by Class Claimants. To date, that amount is $40,179.00. All other Class Claimants that elect to participate will receive a proportional share of the remaining funds based on the damages calculated by Class Counsel.

(D)    Named Plaintiffs. Class Counsel shall seek Court Approval of the payment of a Service Awards of **$7,500** for Named Plaintiff Amadou Barry and **$2,500** for Named Plaintiff Gungor Akcelik, for a total of no more than $10,000, in consideration for work performed on behalf of the Class. Defendants may not oppose or comment on this application. The substance of Plaintiffs' application for a Service Award is not part of this Agreement and is to be considered separately from the Court's consideration of the fairness, reasonableness, adequacy and good faith of the settlement of the Litigation. The outcome of the Court's ruling on the application for a Service Award shall not terminate this Agreement or otherwise affect the Court's Final Approval.

(E)    Maximum Payment. The Parties expressly acknowledge that Defendants shall not be required to pay more than the Settlement Fund of $369,227.50 to the Named Plaintiffs, FLSA Claimants, Class Claimants, Class Counsel, or to anyone else regardless of the aggregate amount of Claims that are filed. To the extent that the aggregate value of all claims submitted by Named Plaintiffs, FLSA Claimants, Class Claimants, the Fee Award and Service Awards to the Named Plaintiffs exceeds $369,227.50, then the individual computed shares to be paid to the Named Plaintiffs, FLSA Claimants, Class Claimants and Class Counsel shall be reduced pro-rata to $369,227.50. To the extent the total aggregate value of all claims submitted by Named Plaintiffs, FLSA Claimants, Class Claimants, the Fee Award and Service Awards to the Named Plaintiffs is less than $369,227.50 such sum shall be distributed by Class Counsel to the Claimants.

**3.2**    **Professional Fees, Costs and Expenses.** At the Fairness Hearing, Class Counsel will petition the Court for an award of attorneys' fees, costs and expenses not to exceed $200,000.00 of the Settlement Fund, which includes reimbursement of a substantial portion of their actual litigation expenses and costs. These fees shall come out of the Settlement Fund Account, within the limits provided for herein. Defendants may not oppose this

application, including any appeal or request for reconsideration if the application is denied or modified by the Court.

3.3   **Default.**  In the event any payment under this Agreement, including Section 2.12, is not made when due, Class Counsel or their authorized agent shall deliver a written notice of such default addressed to Defense Counsel, Mr. Leo Kayser, III.  Such default may be cured by making payment then due to the Claims Administrator or directly to Class Counsel within ten (10) days of receipt of the notice of default.  Should Defendants fail to cure the default, Class Counsel shall apply to the Court to enforce the Settlement Agreement and shall be entitled to reasonable costs, fees, and expenses of such application.

4.   **RELEASE**

4.1   **Release of Claims.**

(A)   Upon the issuing of the Final Order, and except as to such rights or claims as may be specifically created by this Agreement, each Class Member who does not opt-out of this Agreement, on his or her behalf, and on behalf of his or her respective current, former and future heirs, spouses, executors, administrators, agents, and attorneys, fully releases and discharges Defendants, Defendants' present and former parent companies or entities, subsidiaries, related or affiliated companies or entities, and their respective shareholders, officers, directors, employees, members, managers, fiduciaries, trustees, employee benefit plan administrators, agents, attorneys, insurers, successors and assigns, and all persons or entities acting by, through, under or in concert with any of them, and any individual or entity which could be jointly liable with any of them (collectively, the "Releases"), from any and all claims for any wage and hour violations under state and/or local law, including but not limited to, any and all claims for unpaid wages, overtime pay, minimum or straight time wages, failure to maintain and furnish employees with proper wage records, spread-of-hours, claims, meal break claims, uniform maintenance claims, uniform reimbursement claims, and all other claims that were or could have been asserted in the Litigation, whether known or unknown, under state and/or local wage and hour laws (including but not limited to the New York Labor Law and New York Code of Rules and Regulations), through the Effective Date of this Agreement.  This release includes all claims for all damages arising from any such released claims, including claims for liquidated damages, interest, and attorneys' fees' and costs. Notwithstanding any provision to the contrary, any Class Member who is not a Named Plaintiff or an FLSA Claimant or who does not become a Class Claimant as defined in paragraph 1.7, and opt-outs of this Action, shall not have relinquished any rights he or she may possess under the Fair Labor Standards Act.

(B)   In addition to all released claims as detailed in paragraph 4.1(A) above, each Named Plaintiff, FLSA Claimant and Class Claimant specifically and affirmatively releases Defendants from any claims for unpaid minimum wages, overtime wages, liquidated damages, and attorneys' fees and costs related to

13

such FLSA Claims, that were or could have been asserted in the Litigation, whether known or unknown, through the date of preliminary approval of this Agreement. Each Named Plaintiff, Class Claimant and FLSA Claimant forever and fully Releases Defendants from all State Law Claims.

(C) **No Assignment.** Class Counsel and Named Plaintiffs, on behalf of the Class and each individual Class Member, represent and warrant that they have not assigned or transferred, or purported to assign or transfer, to any person or entity, any claim or any portion thereof or interest therein, including, but not limited to, any interest in the Litigation, or any related action.

(D) **Non-Admission of Liability.** By entering into this Agreement, Defendants in no way admit any violation of law or any liability whatsoever to Named Plaintiffs and/or the Class Members, individually or collectively, all such liability being expressly denied. Likewise, by entering into this Agreement, Defendants in no way admit to the suitability of this case for class or collective action litigation other than for purposes of settlement. Rather, Defendants enter into this Agreement to avoid further protracted litigation and to resolve and settle all disputes with Named Plaintiffs and the Class. Settlement of the Litigation, negotiation and execution of this Agreement, and all acts performed or documents executed pursuant to or in furtherance of this Agreement or the settlement: (a) are not, shall not be deemed to be, and may not be used as an admission or evidence of any wrongdoing or liability on the part of Defendants or of the truth of any of the factual allegations in any and all Complaints filed in the Lawsuit; and (b) are not, shall not be deemed to be, and may not be used as an admission or evidence of fault or omission on the part of Defendants in any civil, criminal, administrative or arbitral proceeding. The Parties understand and agree that this Agreement is a settlement document and shall be inadmissible in evidence in any proceeding, except an action or proceeding to approve, interpret, or enforce the terms of the Agreement.

(E) Except as provided in this Agreement, upon payment of the Fee Award approved by the Court, the Named Plaintiffs, FLSA Claimants, Class Claimants, and Class Members, hereby irrevocably and unconditionally release, acquit, and forever discharge any claim that he, she or they may have against Releasees for attorneys' fees, expenses and costs associated with Class Counsel's representation of the Class. Class Counsel further understands and agrees that any fee payments approved by the Court will be the full, final and complete payment of all attorneys' fees, expenses and costs associated with Class Counsel's representation in the Litigation.

## 5. INTERPRETATION AND ENFORCEMENT

**5.1 Cooperation Between the Parties; Further Acts.** The Parties shall reasonably cooperate with each other and shall use their reasonable best efforts to obtain the Court's approval of this Agreement and all of its terms. Each party, upon the request of any other party, agrees

14

to perform such further acts and to execute and deliver such other documents as are reasonably necessary to carry out the provisions of this Agreement.

5.2 **Entire Agreement.** This Agreement constitutes the entire agreement between the Parties with regard to the subject matter contained herein, and all prior and contemporaneous negotiations and understandings between the Parties shall be deemed merged into this Agreement.

5.3 **Binding Effect.** This Agreement shall be binding upon the Parties and, with respect to Named Plaintiffs, FLSA Claimants and Class, their spouses, children, representatives, heirs, administrators, executors, beneficiaries, conservators, attorneys and assigns.

5.4 **Arms' Length Transaction; Materiality of Terms.** The Parties have negotiated all the terms and conditions of this Agreement at arms' length. All terms and conditions of this Agreement in the exact form set forth in this Agreement are material to this Agreement and have been relied upon by the Parties in entering into this Agreement, unless otherwise expressly stated.

5.5 **Captions.** The captions or headings of the Sections and paragraphs of this Agreement have been inserted for convenience of reference only and shall have no effect upon the construction or interpretation of any part of this Agreement.

5.6 **Construction.** The determination of the terms and conditions of this Agreement has been by mutual agreement of the Parties. Each party participated jointly in the drafting of this Agreement, and therefore the terms and conditions of this Agreement are not intended to be, and shall not be, construed against any party by virtue of draftsmanship.

5.7 **Blue Penciling.** If any provision of this Agreement is held by a court of competent jurisdiction to be void, voidable, unlawful or unenforceable, the remaining portions of this Agreement will remain in full force and effect.

5.8 **Governing Law.** This Agreement shall in all respects be interpreted, enforced and governed by and under the laws of the State of New York, without regard to choice of law principles, except to the extent that the law of the United States governs any matter set forth herein, in which case such federal law shall govern.

5.9 **Continuing Jurisdiction.** The Parties shall request the Court to retain jurisdiction over the interpretation and implementation of this Agreement as well as any and all matters arising out of, or related to, the interpretation or implementation of this Agreement and of the settlement contemplated thereby. The Parties shall not petition the Court to modify the terms of the Agreement or to increase Defendant's payment obligations hereunder.

5.10 **Waivers, etc. to Be in Writing.** No waiver, modification or amendment of the terms of this Agreement, whether purportedly made before or after the Court's approval of this Agreement, shall be valid or binding unless in writing, signed by or on behalf of all Parties and then only to the extent set forth in such written waiver, modification or amendment, subject to any required Court approval. Any failure by any party to insist upon the strict performance by the other party of any of the provisions of this Agreement shall not be

15

deemed a waiver of future performance of the same provisions or of any of the other provisions of this Agreement, and such party, notwithstanding such failure, shall have the right thereafter to insist upon the specific performance of any and all of the provisions of this Agreement.

5.11    **When Agreement Becomes Effective; Counterparts.** This Agreement shall become effective upon its full execution and final approval by the Court. The Parties may execute this Agreement in counterparts, and execution in counterparts shall have the same force and effect as if all Parties had signed the same instrument.

5.12    **Binding Authority of Plaintiffs' Counsel.** Plaintiffs' Counsel hereby represents that they are fully authorized to bind the Named Plaintiffs to the terms and conditions hereof and that they have retainer agreements and/or authorizations to execute this Agreement on their behalf.

5.13    **Signatures.** This Agreement is valid and binding if signed by the Parties' authorized representatives.

5.14    **Facsimile and Email Signatures.** Any party may execute this Agreement by causing its counsel to sign on the designated signature block below and transmitting that signature page via facsimile or email to counsel for the other party. Any signature made and transmitted by facsimile or email for the purpose of executing this Agreement shall be deemed an original signature for purposes of this Agreement and shall be binding upon the party whose counsel transmits the signature page by facsimile or email. This Agreement may be executed in counterparts.

_____

Robert Dinozzi, individually and on behalf of
SEB Services of New York, Inc.

Dated: 5/29/15

_____

Gungor Akcelik

Dated: _____

_____

Amadou Barry

Dated: _____

16

deemed a waiver of future performance of the same provisions or of any of the other provisions of this Agreement, and such party, notwithstanding such failure, shall have the right thereafter to insist upon the specific performance of any and all of the provisions of this Agreement.

5.11 **When Agreement Becomes Effective; Counterparts.** This Agreement shall become effective upon its full execution and final approval by the Court. The Parties may execute this Agreement in counterparts, and execution in counterparts shall have the same force and effect as if all Parties had signed the same instrument.

5.12 **Binding Authority of Plaintiffs' Counsel.** Plaintiffs' Counsel hereby represents that they are fully authorized to bind the Named Plaintiffs to the terms and conditions hereof and that they have retainer agreements and/or authorizations to execute this Agreement on their behalf.

5.13 **Signatures.** This Agreement is valid and binding if signed by the Parties' authorized representatives.

5.14 **Facsimile and Email Signatures.** Any party may execute this Agreement by causing its counsel to sign on the designated signature block below and transmitting that signature page via facsimile or email to counsel for the other party. Any signature made and transmitted by facsimile or email for the purpose of executing this Agreement shall be deemed an original signature for purposes of this Agreement and shall be binding upon the party whose counsel transmits the signature page by facsimile or email. This Agreement may be executed in counterparts.

Dated: _____

_____
Robert Dinozzi, individually and on behalf of
SEB Services of New York, Inc.

_____                    Dated: 05/28/2015
Gungor Akcelik

_____                    Dated: 05/28/2015.
Amadou Barry

16

Dated: April 21, 2015

By: _____                    Dated: _5/28/15_
Lloyd R. Ambinder
Suzanne Leeds Klein
VIRGINIA & AMBINDER, LLP
40 Broad Street, 7th Floor
New York, New York 10004
Tel: (212) 943-9080

By: _____                    Dated: _May 28, 2015_
Jeffrey K. Brown
Michael Tompkins
LEEDS BROWN LAW, P.C.
One Old Country Road, Suite 347
Carle Place, New York 11514
Tel: (516) 873-9550

*Attorneys for Plaintiffs*

By: _____                    Dated: _____
Leo Kayser, III
Kayser & Redfern, LLP
515 Madison Avenue, 31st Fl.
New York, New York 10022
Tel: (212) 935-5057

*Attorneys for Defendants*

17

Dated: May 29, 2015

By: _____           Dated: _____
Lloyd R. Ambinder
Suzanne Leeds Klein
VIRGINIA & AMBINDER, LLP
40 Broad Street, 7th Floor
New York, New York 10004
Tel: (212) 943-9080


By: _____           Dated: _____
Jeffrey K. Brown
Michael Tompkins
LEEDS BROWN LAW, P.C.
One Old Country Road, Suite 347
Carle Place, New York 11514
Tel: (516) 873-9550

*Attorneys for Plaintiffs*

By _____            Dated: 5/29/15
Leo Kayser, III
Kayser & Redfern, LLP
515 Madison Avenue, 31st Fl.
New York, New York 10022
Tel: (212) 935-5057


*Attorneys for Defendants*

17