UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - X

AMADOU BARRY and GUNGOR AKCELIK,
individually and on behalf of all
other persons similarly situated who
were employed by S.E.B. SERVICE OF NEW
YORK, INC. and/or and/or ROBERT          ORDER
DINOZZI any other entities affiliated
with or controlled by S.E.B. SERVICE     11-cv-5089 (MDG)
OF NEW YORK, INC., and/or ROBERT
DINOZZI,

                          Plaintiffs,

          -against-

S.E.B. SERVICE OF NEW YORK, INC.,
and/or ROBERT DINOZZI and/or any other
entities affiliated with or controlled
by S.E.B. SERVICE OF NEW YORK, INC.,
and/or ROBERT DINOZZI,

                          Defendants.

- - - - - - - - - - - - - - - - - - X

GO, United States Magistrate Judge:

     Plaintiffs Amadou Barry and Gungor Akcelik bring this putative

class action on behalf of current former employees who worked for

defendant S.E.B. Service of New York, Inc. ("S,E,B,") as security

guards, and assert claims for unpaid wages and overtime under the

Fair Labor Standards Act, 29 U.S.C. §§ 207(a), 211(c),

215(a)(2)(5), 216 and 217 (2004) ("FLSA"), and pendent state claims

under the New York Labor Law, N.Y. Lab. Law, §§ 650 et seq., and

its implementing regulations.  N.Y. Comp. Codes R. & Regs. tit. 12,

§ 142-2.2 (2004).  After reaching an agreement to settle all

federal and state law claims in this action, the parties
consented pursuant to 28 U.S.C. § 636(c) to having me hear all
matters in this action (DE 113), including their motions for
approval of the settlement of claims under the FLSA and final
approval of the settlement of the class claims pursuant to Fed.
R. Civ. P. 23(e). This Court previously granted plaintiffs'
motion for approval of the settlement of their FLSA claims and
for preliminary approval of the settlement of their class claims.
See Preliminary Approval Order (DE 116).

For the following reasons, I now grant plaintiffs' motions
(DE 114) for final approval of the settlement of the class
claims, final certification of the settlement class, payment of
service awards to the named plaintiffs and payment of attorneys'
fees.

## FACTUAL AND PROCEDURAL BACKGROUND

On October 19, 2011, plaintiff Amadou Barry and Engin Malcok
commenced this putative class action against defendants S,E,B,
and Robert Dinozzi, the principal and owner of S,E,B,, claiming
that the defendants failed to pay plaintiffs and other similarly
situated workers overtime wages for hours worked over 40 hours
per week, in violation of the FLSA and New York Labor Law.  Both
plaintiffs alleged that in the course of their work, they "would
travel to different worksites throughout New York, New Jersey and
Connecticut during which time [they were] not compensated for all
hours worked" and were "paid a straight time hourly wage or flat

salary, while working approximately 50-60 hours per week."
Complaint at ¶¶ 27, 28, 30.  Mr. Malcok later voluntarily
dismissed his claims against defendants (DE 56, 57), but Gungor
Akcelik subsequently joined as a second named plaintiff[1] in an
amended complaint filed on December 11, 2013 with the consent of
defendants.  <u>See</u> DE 71.  Mr. Barry worked as as an undercover
security guard, while Mr. Akcelik worked as a uniformed security
guard.  <u>See</u> Am. Compl. at ¶¶ 27, 28.

After conducting some discovery, the original plaintiffs
filed a motion for leave pursuant to 29 U.S.C. § 216(b) to send
notices of this collective action to other workers.  <u>See</u> DE 38.
The Honorable Sandra Townes granted the motion by order filed on
November 23, 2013.  <u>See</u> DE 69.  After discussions with the
parties, then Magistrate Judge Joan M. Azrack issued an order on
January 31, 2014 ("FLSA Notice Order") directing that notices in
English and Spanish of this FLSA collective action lawsuit and
consent forms be mailed to all current and former employees of
S.E.B. who worked as security personnel from May 7, 2009 through
the present.  <u>See</u> DE 74.  She also required that the notice be
mailed within 45 days and that consents to join the collective
action be submitted within 60 days thereafter.  <u>Id.</u>  After
issuance of these orders, additional individuals filed consents
to become parties in this collective action.  <u>See</u> DE 76, 79-85,

---

[1]  Although four other employees had filed consents to join
the FLSA collective prior to the filing of the amended complaint
(DE 23, 24, 27, 28), only Mr. Barry and Mr. Akcelik are named as
plaintiffs in the amended pleading.  <u>See</u> DE 71.

90, 92, 97.

In the meanwhile, the parties engaged in further discovery and unsuccessfully attempted to settle this action, including participating in Court-Annexed Mediation.  See DE 88.  After this action was reassigned to me for pretrial supervision when Judge Azrack became a district judge, I held four settlement conferences with the parties.  After the second settlement conference, plaintiffs filed a motion for a protective order claiming that defendants improperly communicated with employees and induced some to settle.  See DE 101, 102, 105.  However, the motion was held in abeyance as settlement discussions were progressing.  The parties ultimately reached an agreement in principle to settle at a conference on April 9, 2015.  See DE 106; minute entries dated 3/12/2015, 4/9/2015.

On May 22, 2015, plaintiffs moved for final approval of the settlement of the collection action claims under the FLSA and for preliminary approval of the settlement of certain class claims under the New York Labor Law.  See DE 109.  Plaintiffs' counsel filed the settlement agreement (the "Settlement Agreement ") executed by all plaintiffs on June 1, 2015.  See DE 112.  The Settlement Agreement reached provides for the creation of a settlement fund of $369,227.50 to resolve the all claims, and to cover court approved attorneys' fees and costs, administration costs and service awards to the named plaintiffs.  Specifically, settlement funds would be paid to three overlapping subgroups: (1) $58,987.00 to be paid to all persons who had worked during

-4-

the period from May 7, 2009 through May 16, 2014 for "off-the-clock" work and had timely filed consent forms to join the collective action, as identified in Exhibit B to the agreement ("FLSA Claimants"), for damages under the FLSA; (2) $43,610.00 to be paid to a proposed class of FLSA Claimants with claims under the New York Labor Law who worked from October 19, 2005 through May 6, 2009 for damages under the Labor Law; and (3) $56,630.50 to be paid to a proposed class of undercover security personnel ("UC Class") who worked from October 19, 2005 through May 14, 2014.  DE 109-1 at 3-4.  Over 190 potential members of the UC Class are identified in Exhibit A, and, under the terms of the Settlement Agreement, any member of the UC Class who files a claim ("Class Claimants") cannot be either a named plaintiff or included in the list of FLSA Claimants attached as Exhibit B to the Settlement Agreement.  <u>See</u> Agreement at §§ 1.6, 1.7, 1.19. Settlement payments would be distributed based on the amount of time the were employed, but defendants would be credited for any amounts already distributed and accepted by a UC Class member.[2]

---

[2] The prior payments made by defendants were the subject of the motion for a protective order filed by plaintiffs to enjoin the defendants from contacting putative class members discussed above.  <u>See</u> <u>supra</u> p. 4; DE 101-1.  Plaintiffs claimed in their motion that defendants improperly sent without plaintiffs' counsel's knowledge notices to putative class members offering settlement payments and successfully obtained releases from some putative class members.  <u>Id</u>.  The plaintiffs agreed to withdraw their request for a show cause order to engage in further settlement discussions, and the parties later agreed that persons providing releases were entitled to participate in the settlement reached, but that any amounts already paid to putative class members would be credited toward the final settlement.  <u>See</u>

(continued...)

See DE 114-5 at 3-4; Klein Decl. at ¶¶ 10, 11.

This Court held a hearing on the motion for approval of the settlement of FLSA and for preliminary approval of class claims on June 26, 2015.  Noting a number of errors in the proposed notices, this Court required the parties to submit revised notices.  See minute entry for 6/24/2015.  After further discussion at a continued hearing on July 2, 2015 and review of the proposed revised notices, this Court granted the motion for final approval of the FLSA settlement for the reasons stated on the record.  See minute entry filed 7/7/2015.  Although observing that the dates in the class definition contained in the Settlement Agreement conflicted with the definitions in the notice, this Court also granted preliminary approval of the proposed class settlement and provisionally approved the FLSA Class and the UC Class, subject to amendment of the pertinent documents so the definitions would be consistent.  Id.[3]  The Court also appointed as class counsel Lloyd Ambinder and Suzanne Leeds Klein of Virginia & Ambinder, LLP, and Jeffrey K. Brown and

(...continued)
minute entry filed 3/13/2015.  Thus, to the extent that any class member is entitled to receive a portion of the fund to UC Class members, defendants would be credited for any amounts previously paid to that class member paid in conjunction with the releases obtained by defendants.  Klein Decl. at ¶ 11.

[3]  Because the parties did not file the amended provisions of the Settlement Agreement until November 9, 2015, see DE 115, this Court did not file its written order approving settlement of the plaintiffs' FLSA claims and preliminarily approving the class settlement until November 12, 2015.  See DE 116. However, this Court faxed the proposed order to counsel shortly after the hearing.

Michael Tompkins of Leeds Brown Law, P.C.  See DE 116.  This
Court also required that the settlement be funded by July 27,
2015 and that settlement checks be promptly sent to the FLSA
Claimants who joined the collective action and had accepted the
settlement of their claims under the FLSA.  Id.

Following the hearing on July 7, 2015, the plaintiffs filed
the instant motion for final approval of the class action
settlement, and for approval of attorneys' fees and a service
award to the two remaining named plaintiffs. See DE 114.
Plaintiffs' counsel state in their motion that following the July
7, 2015 conference, they mailed notices of Proposed Settlement
and Release ("Notices") to the putative members of the UC Class
and FLSA Claimants in accordance with the procedure discussed at
the conference and set forth in the agreement.  See Mem. in
Support of Motion for Final Approval, DE 114-1 at 2; Decl. in
Support of Motion of Suzanne Leeds Klein, DE 114-2 ("Klein
Decl.") at ¶¶ 3, 4.  Specifically, counsel mailed 196 notices of
the proposed settlement and release form to 196 putative members
of the UC Class to their last known addresses.  Klein Decl. at
¶ 4.  Forty-seven notices were returned as undeliverable and 25
were re-mailed to new addresses obtained from a skip trace.  Id
at ¶¶ 3-4.  Counsel received claims from 32 UC Class members by
the deadline set, some of whom had previously received and
accepted settlement checks from the defendants. Id. at ¶ 4; DE
115 at 6.  Plaintiffs' counsel then received three additional
claims from claimants whose notices were originally returned and

remailed, and request that the late claim forms be accepted.  DE 115 at 6 and n. 3.  Defendants have not objected to the three late claims.  Since defendants have not objected to the late claims submitted by the three additional class members, I grant plaintiffs' request to permit them to join the UC Class.

In addition to the notices sent to putative class members of the UC Class, class counsel mailed notices and checks to 283 members of the FLSA Claimant Class.  Klein Decl. at ¶ 4.  In accordance with the settlement agreement to settle FLSA claims in this action as approved by this Court, the settlement checks include amounts to settle both the FLSA Claims and New York Labor Law claims of the FLSA Claimants.  As of the date of Ms. Klein's letter, 200 of the checks had been cashed.

No class members have objected or opted out of the settlement.  Id.; Klein Decl. at ¶4.

Plaintiffs also seek in their motion approval for payment of service awards to the named plaintiffs, Amadou Barry and Gungor Akcelik, of $7,500 and $2,500, respectively, and for payment of attorneys' fees in the amount of $200,000, as set forth in the settlement agreement.


DISCUSSION

I.    Final Certification of the Settlement Class

In the Preliminary Approval Order, I found that the Settlement Class satisfied the requirements of numerosity, commonality, typicality, adequacy, ascertainability and

-8-

maintainability under Rule 23(a) and (b)(3), and granted preliminary certification of the Settlement Class, consisting of the following two subclasses holding claims not covered by the settlement of the FLSA Claims:  (1) an FLSA Claimant Class consisting of plaintiffs and all persons who had filed consents to join the FLSA collective and who had performed work for S,E,B, from October 19, 2005 through May 6, 2009; and (2) a UC Settlement Class consisting of Plaintiffs and all current and former persons who performed work for defendant S.E.B. as undercover security personnel from October 19, 2005 through the May 14, 2014, excluding all administrative, executive, supervisory, office and managerial positions.

This Court has treated the claims of the FLSA Claimants with New York Labor Law claims as class claims, even though the parties attempt to dispose of those claims in conjunction with the claims of the FLSA claimants and have not directly addressed class requirements as to settlement of any New York Labor Law claims, other than those of undercover security guards.  However, plaintiffs clearly intended at the inception of this case to assert claims under the New York Labor Law on behalf of all security guards, whether undercover or not, but did not include in the agreement reached settlement of any New York Labor Law claims of security guards who did not work undercover or who did not join the FLSA collective action.  This Court is of the view that the better course is to consider under Rule 23 all the New York Labor Law claims being settled- - both of the UC Settlement

-9-

class and of the FLSA Claimants with New York Labor Law claims. Importantly, the claims of this smaller subgroup of claimants with New York Labor Law claims can properly be treated under Rule 23 since collective actions under the FLSA are a species of class actions, but with an opt-in requirement.  Cf. Myers v. Hertz Corp., 624 F.3d 537, 542 (2d Cir. 2010) (noting that an "opt-in" FLSA collective action is "[u]nlike ... traditional 'class actions' maintainable pursuant to Federal Rules of Civil Procedure 23").  In fact, the notice to the FLSA Claimants attached as Exhibit C of the Settlement Agreement states, appropriately, that the "Notice relates to a proposed settlement of class and collective action litigation."  DE 109-4.  In order to insure that the claims of the persons who are not undercover guards and did not opt-in to the collective action are not prejudiced, this Court has thus accorded class treatment to settlement of the New York Labor Law claims, but of a small subgroup of security guards -- i.e., the FLSA Claimants with New York Labor Law claims.  This means that any bar order would not affect the rights of the guards who were not neither sent notice of the settlement nor included in the Settlement Agreement.

In any event, no facts have been presented to me to date which leads me to find that my preliminary determination was incorrect nor has any party claimed that my preliminary determination was erroneous.  Thus, for the reasons stated in the Preliminary Approval Order, I conclude that final certification of the two settlement classes is proper, as further discussed

below.

Because there are more than 150 putative members of the UC Class and 284 members of the class consisting of FLSA Claimants with New York Labor Law Claims, joinder is impracticable.  See Consol. Rail. Corp. v. Town of Hyde Park, 47 F.3d 473, 483 (2d Cir. 1995).  Thus, plaintiffs satisfy Fed. R. Civ. P. 23(a)(1).

Plaintiffs satisfy Fed. R. Civ. P. 23(a)(2), the commonality requirement, because Plaintiffs and the class members share common issues of fact and law, including whether Defendants failed to pay Plaintiffs and the Class Members for all of the overtime they worked and for time spent traveling.

Plaintiffs satisfy Fed. R. Civ. P. 23(a)(3), typicality, because plaintiffs' claims arise from the same factual and legal circumstances that form the bases of the class members' claims. See Prasker v. Asia Five Eight LLC, No. 08 Civ. 5811, 2010 WL 476009, at *2 (S.D.N.Y. Jan. 6, 2010).

Plaintiffs satisfy Fed. R. Civ. P. 23(a)(4), adequacy, because plaintiffs' interests are not antagonistic or at odds with the class members.  See Diaz v. Eastern Locating Servs., Inc., No. 10 Civ. 4082, 2010 WL 2945556, at *2 (S.D.N.Y. July 22, 2010); Prasker, 2010 WL 476009, at *2.

Plaintiffs also satisfy Rule 23(b)(3).  Because plaintiffs assert common factual allegations that Defendants failed to pay Class Members for all the time they worked and pay at an overtime rate for hours worked in excess of 40 hours a week, a common legal theory predominates over any factual or legal variations

among class members.  See Diaz, 2010 WL 2945556, at *2; Prasker,

2010 WL 476009, at *2.  Class adjudication of this case is

superior to individual adjudication because it will conserve

judicial resources and is more efficient for class members,

particularly those who lack the resources to bring their claims

individually.  See Diaz, 2010 WL 2945556, at *2.

II.  Approval of the Settlement Agreement

     In evaluating a proposed settlement under Rule 23(e) of the

Federal Rules of Civil Procedure, the Court must determine

whether the settlement, taken as a whole, is fair, reasonable and

adequate.  See Joel A. v. Giuliani, 218 F.3d 132, 138 (2d Cir.

2000).  Settlements are strongly favored as a matter of policy,

since "[b]y lessening docket congestion, settlements make it

possible for the judicial system to operate more efficiently and

more fairly while affording plaintiffs an opportunity to obtain

relief at an earlier time." Evans v. Jeff D., 475 U.S. 717, 761

n.15 (1986).  Thus, "[s]ettlement approval is within the Court's

discretion, which 'should be exercised in light of the general

judicial policy favoring settlement.'" In re Sumitomo Copper

Litig., 189 F.R.D. 274, 280 (S.D.N.Y. 1999) (citation omitted);

accord, Maley v. Del Global Tech. Corp., 186 F. Supp. 2d 358, 361

(S.D.N.Y. 2002).

     A court evaluating the fairness of a settlement should

examine both procedural and substantive fairness.  Wal-Mart

Stores, Inc. v. Visa U.S.A., Inc., 396 F.3d 96, 116 (2d Cir.

2005), citing D'Amato v. Deutsche Bank, 236 F.3d 78, 85-86 (2d
Cir. 2001).

In reviewing the procedural fairness of a settlement, a
court "must pay close attention to the negotiating process, to
ensure that the settlement resulted from 'arm's-length
negotiations and that plaintiffs' counsel have possessed the
experience and ability, and have engaged in the discovery
necessary to effective representation of the class's interests.'"
D'Amato, 236 F.3d at 85 (quoting Weinberger v. Kendrick, 698 F.2d
61, 74 (2d Cir. 1982)).  A proposed class action settlement
enjoys a strong presumption that it is fair, reasonable and
adequate if, as is the case here, it was the product of arm's
length negotiations conducted by capable counsel, well
experienced in class action litigation. See Wal-Mart Stores, Inc.
v. Visa U.S.A. Inc., 396 F.3d 96, 117 (2d Cir. 2005).  See also
McReynolds v. Richards-Cantave, 588 F.3d 790, 803 (2d Cir. 2009).
In addition, "[i]n appraising the fairness of a proposed
settlement, the view of experienced counsel favoring the
settlement is 'entitled to [] great weight' . . . . [and] there
is thus a strong initial presumption that the compromise as
negotiated herein under the [c]ourt's supervision is fair and
reasonable."  In re Michael Milken and Assocs. Sec. Litig., 150
F.R.D. 46, 54 (S.D.N.Y. 1993) (internal citation omitted).

In evaluating the substantive fairness a class action
settlement, district courts must consider the nine Grinnell
factors enumerated by the Second: (1) the complexity, expense and

likely duration of the litigation; (2) the reaction of the class
to the settlement; (3) the stage of the proceedings and the
amount of discovery completed; (4) the risks of establishing
liability; (5) the risks of establishing damages; (6) the risks
of maintaining the class action through the trial; (7) the
ability of the defendants to withstand a greater judgment; (8)
the range of reasonableness of the settlement fund in light of
the best possible recovery; [and] (9) the range of reasonableness
of the settlement fund to a possible recovery in light of all the
attendant risks of litigation. City of Detroit v. Grinnell
Corp., 495 F.2d 448, 463 (2d Cir. 1974).  In applying these
factors, the Court may neither substitute its judgment for that
of the parties who negotiated the settlement nor conduct a mini-
trial of the merits of the action.  See Weinberger, 698 F.2d at
74.  "[T]he role of a court in passing upon the propriety of the
settlement of a . . . class action is a delicate one . . . .
[W]e recognize that since the very purpose of a compromise is to
avoid the trial of sharply disputed issues and to dispense with
wasteful litigation, the court must not turn the settlement
hearing into a trial or a rehearsal for the trial." Newman v.
Stein, 464 F.2d 689, 691-92 (2d Cir. 1972) (citation and internal
quotations omitted).  The Court must determine whether the
settlement is within a range that reasonable and experienced
attorneys could accept considering all relevant risks, facts, and
circumstances.  See Weinberger, 698 F.2d at 74; Grinnell, 495
F.2d at 455.

As a preliminary matter, I further discuss the structure of the settlement.  The agreement reached provides for settlement of the claims of persons who had filed timely consents to join the FLSA collective action ("FLSA Claimants") and are identified as the first two subgroups to share in the Settlement Fund.  See DE 115 at 3.  Payments would be made to settle the FLSA claims of the FLSA Claimants for work from May 7, 2009, the beginning date of the period set by Judge Azrack in the FLSA Notice Order, through May 16, 2014.  Payments would also be made to settle New York Labor Law claims of any FLSA Claimant who worked during the period from October 19, 2005 through May 6, 2009 and of persons other than FLSA Claimants who had worked as undercover security guards in New York between October 19, 2005 through May 14, 2014, and files a notice of claim to be member of the UC Class. Payments would be allocated in accordance with the formulas in the settlement agreement which are based, in part, on hours worked, and an audit conducted.  See Sett. Ag. § 3.1.

In other words, the Settlement Agreement provides for settlement of both the FLSA and New York Labor Law claims of all persons who have filed consents to join the FLSA collective and all persons who worked in New York as undercover guards for the periods covered under both the FLSA and New York Labor Law from October 19, 2005 through May 14, 2014.  On the other hand, present and former employees of S.E.B. who did not file timely consents to join the collective action and did not work in New York as undercover guards would neither receive notice of the

-15-

settlement nor any payment under the settlement.  Since such persons do not fall in either the FLSA Claimant Class or the UC Class, they are not subject to the Claim Bar Date in Section 1.3 of the settlement agreement.  <u>See</u> DE 114-5 at 2.  However, this Court notes that approximately 2,700 notices of the FLSA collective action were sent to all persons who had worked security guards, in accordance with Judge Azrack's FLSA Notice Order, and over 270 persons elected to opt-in to the FLSA collective.[4]  <u>See</u> Affidavit of Robert Dinozzi dated Feb. 26, 2015 ("Dinozzi Aff.") at ¶ 21 (DE 195).  All persons who worked for S.E.B. between May 7, 2009 and May 14, 2014 had both notice and an opportunity join the FLSA collective.

A.  <u>Procedural Fairness</u>

The parties reached this settlement after the parties engaged in significant pre-class certification discovery, including depositions of all the parties, substantial written discovery and audit of defendants' records.  <u>See</u> DE 115 at 4. The parties also participated in protracted settlement negotiations, in formal mediation and under Court supervision. <u>Id.</u>  Additionally, plaintiffs' current counsel, Lloyd Ambinder and Suzanne Leeds Klein of Virginia and Ambinder, LLP, and Jeffrey K. Brown and Michael Tompkins of Leeds Brown Law, P.C.

---

[4]  There are 284 names listed in Exhibit B to the Settlement Agreement, but Mr. Dinozzi states in his affidavit that 274 persons opted-in.  Dinozzi Aff. at ¶ 21.

recommend that this Court approve the settlement.  All four attorneys have experience litigating class and collective actions based on wage and hour claims, spent significant time and did substantial work identifying, investigating, and settling plaintiffs' and the UC Class Members' claims.  DE 114-2 at 10-11. This Court observed counsel's performance in this action in status conferences and multiple settlement conferences and finds that their performance in both litigating and settling this case demonstrates their commitment to the classes and to representing the interests of the classes.

I find from my participation in the settlement process that the settlement was a product of extensive arm's length negotiations by experienced counsel.  There is no hint that coercion or collusion affected the process.  Because of all these circumstances, the presumption of procedural fairness applies here.

   B.   <u>Substantive Fairness</u>

The settlement is substantively fair.  Eight of the nine factors set forth in <u>Grinnell</u> weigh in favor of final approval.

   *Complexity, Expense and Likely Duration of Litigation.* Continuing this litigation would result in delay and further expense.  Litigating cross-motions for summary judgment and, proceeding to a trial, and any post-judgment motions and appeals would have required further expenditure of both time and money. Absent a settlement, the costs incurred by continuing this

litigation would likely have outweighed any potential recovery. In addition, the delay inherent in further litigation would reduce the value of any potential recovery.  See Maley, 186 F. Supp. 2d at 361-62.  On the other hand, the settlement provides certain compensation to the class members now rather than awaiting an eventual resolution that would result in further expense without any definite benefit.

Reaction of the Class.  "It is well-settled that the reaction of the class to the settlement is perhaps the most significant factor to be weighed in considering its adequacy." Maley, 186 F. Supp. 2d at 362-63.  As discussed below, notices regarding the settlement were sent to the 196 members of the UC Class and 284 members of the class of FLSA Claimants with New York Labor Law claims, and the notices contained an explanation of the allocation formulas for the calculation of each class member's award.  DE 115 at 5-6; see DE 114-4 (Notice) at 2.  The notices also informed class members of their right to object or to exclude themselves from the settlement, and  explained how to do so.  Id.  Under the Settlement Agreement, the members of the FLSA Claimant class with New York Labor Law Claims did not need to file claims.  A total of 35 persons filed claims to join the UC class and no putative class member has opted out or excluded himself from the settlement.  DE 115 at 6.  No class member objected to the settlement.  Id.  This factor weighs in favor of approval of the settlement.

-18-

*The Stage of the Proceedings*.  The stage of the proceedings and the amount of discovery completed are evaluated to ensure that the parties "have a clear view of the strengths and weaknesses of their cases." In re Warner Comm. Sec. Litig., 618 F. Supp. 735, 745 (S.D.N.Y. 1985), aff'd, 798 F.2d 35 (2d Cir. 1986).  This litigation settled after substantial discovery had been completed.  The discovery process involved the taking of a number of depositions; obtaining and analysis of relevant documents, including S.E.B.'s personnel files and payroll records; the interviewing of many former workers; and the obtaining declarations from plaintiffs and class members.  DE 115 at 6.  Plaintiffs' counsel had sufficient and adequate information to evaluate the merits of plaintiffs' claims, the strengths of the defenses asserted by defendants and the value of plaintiffs' claims.  See Maley, 186 F. Supp. 2d at 364.  Given the extensive discovery conducted prior to settlement and the ample opportunity for plaintiffs' counsel to review and analyze necessary information, this factor weighs in favor of approving the settlement.  Cf. Wal-Mart Stores, 396 F.3d at 118 ("[i]f all discovery has been completed ..., the court obviously has sufficient evidence to determine the adequacy of settlement").

*Risks Involved in Establishing Liability and Damages*.  The risk of establishing liability and damages further weighs in favor of final approval. "Litigation inherently involves risks." deMunecas, 2010 WL 3322580, at *1.  One purpose of a settlement is to avoid the uncertainty of a trial on the merits.  Id.

-19-

Here, plaintiffs' claims were based on uncompensated time generally and for travel between work sites.  However, after discovery and review of S,E,B,'s payroll and travel records, plaintiffs' counsel found that putative class members may have worked fewer hours than originally claimed and that this could result in a more limited recovery for the majority of class members than initially anticipated.  See DE 115 at 6-7.  As discussed at the hearing and prior conferences, defendants, who had time records for the relevant periods, vigorously argued that the records established proper payment of wages, including overtime pay.  Proving that these records were not correct would be particularly difficult for security guards who did not work undercover, since they were required to work at set locations and at set hours related to the operations of businesses they guarded.  Id.  If plaintiffs proceeded to trial, they would have to engage in significant factual development, including establishing actual number of hours worked, in order to prevail.  Counsel also posits that many of the plaintiffs, who are unsophisticated, would have difficulty testifying.  Id.  The parties have not briefed class certification or summary judgment motions, and have not begun expert discovery.  Continuing with the litigation would therefore entail significant costs and take considerable time.  Although plaintiffs might ultimately establish liability and damages at trial, settlement at this stage mitigates the risk of receiving lower damages following trial and avoids the additional costs of protracted litigation.

*Risks Involved in Maintaining the Class Action.*   The risk of maintaining class status throughout trial also weighs in favor of final approval.  Since defendants were likely to contest class certification, any certification motion would face vigorous opposition and require extensive discovery and briefing.  As plaintiffs' counsel noted, plaintiffs risked difficulties in overcoming defendants' opposition to certification given the "off-the-clock" nature of their claims.  Id. at 7.  Even if the Court were to grant a class certification motion, defendants could seek to file a Fed. Rule Civ. Proc. 23(f) appeal and/or move to decertify, which would require additional rounds of briefing.  Settlement eliminates the risk, expense and delay inherent in this process.  See Campos, et al. v. Goode, et al., No. 10 Civ. 224, 2011 WL 9530385, at *14 (S.D.N.Y. Mar. 4, 2011).  Thus, this Grinnell factor weighs in favor of final approval.

*Defendants' Ability to Withstand a Greater Judgment*.  There is no evidence presented that defendants lack the resources to withstand a greater judgment.  However, where the other factors weigh in favor of approval, this factor alone does not suggest that the settlement is unfair.  In re Giant Interactive Grp., Inc. Sec. Litig., 279 F.R.D. 151, 162 (S.D.N.Y. 2011).  Accordingly, this factor neither weighs in favor nor against approval.

*Reasonableness of the Settlement in Light of Risks and the Best Possible Recovery.*  The determination of a reasonable settlement "'is not susceptible of a mathematical equation yielding a particularized sum,' but turns on whether the settlement falls within 'a range of reasonableness.'"  In re PaineWebber Ltd. P'ship Litig., 171 F.R.D. 104, 130 (S.D.N.Y. 1993) (quoting Milken, 150 F.R.D. at 66).  As the Second Circuit has stated, "[t]he fact that a proposed settlement may only amount to a fraction of the potential recovery does not, in and of itself, mean that the proposed settlement is grossly inadequate and should be disapproved."  Grinnell, 495 F.2d at 455.  "In fact, there is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery."  Id. at 455 n.2.

Assuming that plaintiffs could prove liability, they would have difficulty proving they are entitled to a judgment for substantial damages.  Defendants have vigorously disputed both whether they failed to pay overtime and the number of overtime hours worked.  There is a risk that the amount of overall damages that could be recovered at trial would be less that the amounts offered under the settlement and would be more than offset by increased litigation costs.  Indeed, as plaintiffs' counsel acknowledges, this settlement provides more than just "a fraction of the potential recovery;" not only would many class claimants receive much, if not all, of the wages they are allegedly owed,

but some other claimants would receive more than they would have recovered at trial.  DE 115 at 8.  I thus find that this settlement is well within the range of reasonableness given the risks and delay of continued litigation measured against the value of obtaining certain compensation more quickly.  See In re "Agent Orange" Prod. Liab. Litig., 611 F. Supp. 1396, 1405 (E.D.N.Y. 1985) ("much of the value of a settlement lies in the ability to make funds available promptly").

    *The Plan of Allocation*.  "To warrant approval, the plan of allocation must also meet the standards by which the settlement was scrutinized - namely, it must be fair and adequate."  Maley, 186 F. Supp. 2d at 367 (internal citation and quotations omitted).  "An allocation formula need only have a reasonable, rational basis, particularly if recommended by experienced and competent class counsel."  Id.  In determining whether a plan of allocation is fair, courts look primarily to the opinion of counsel.  See PaineWebber, 171 F.R.D. at 133.  That is, "[a]s a general rule, the adequacy of an allocation plan turns on whether counsel has properly apprised itself of the merits of all claims, and whether the proposed apportionment is fair and reasonable in light of that information."  Id.

    Courts also consider the reaction of the class to a plan of allocation.  See Maley, 186 F. Supp. 2d at 367; PaineWebber, 171 F.R.D. at 126.  The notices, which this Court reviewed and approved, were sent to 196 class members to addresses plaintiffs' counsel and the Claims Administrator were able to obtain and to

all FLSA Claimants with New York Labor Law claims.  See Klein Decl. at ¶ 4; DE 114-4 (Notice) at 2.  The Notice provided the class members with an explanation of how their award would be calculated according to the plan of allocation.  See Notice at 2. No objections to the settlement have been received.  See Klein Decl. at ¶ 4.

The Settlement Agreement provides that the participating class members would be paid out of a "Settlement Fund" of $369,227.50 which defendants have already funded.  DE 114-5 (Settlement Agreement); see DE 115-2 (amended page of settlement agreement); Klein Decl. at ¶ 8.  In accordance with this Court's prior order, plaintiffs' counsel have already distributed $58,987.00 to FLSA Claimants in settlement of their FLSA claims, and $43,610.00 in settlement of their New York Labor Law claims. Id. at ¶ 9.  The amount of $56,630.50 will be proportionally distributed to UC Class Claimants based on hours worked, multiplying the amount of calculated exposure by two to account for liquidated damages, adding an additional percentage to the total amount to account for any deficiencies in the calculations, and determining a percentage based on total wages earned during employment with S,E,B,.  Id. at ¶ 10; see Settlement agreement at 3.  The amounts owed to class claimants employed as undercover guards range from $81.25 to $11,520.00.  Id.

The amount paid to UC Class claimants was established by: (i) conducting an audit of S,E,B,'s records (including schedules, payroll documents, timesheets, etc.) (ii) multiplying the amount

of calculated exposure by two to account for liquidated damages (iii) adding an additional percentage to the total amount to account for any deficiencies in the calculations; and (iv) determining a percentage based on total wages earned during employment with S,E,B,. See Settlement Agreement at 12; Klein Decl. at ¶ 10.

Likewise, the settlement of the claims of the FLSA Claimants with New York Labor Law claims was allocated based, in part, on hours worked and as set forth in the Settlement Agreement. Id. at § 3.1(b). This Court also notes that in light of the greater difficulty that guards who did not work undercover would have in proving liability and damages than guards who worked undercover, the allocation of payments amount the various sub-groups under the settlement is appropriate.

Thus, because the allocation of the settlement proceeds would award plaintiffs at least a substantial portion, if not more, of the damages owed to them, this Court finds that the allocation recommended by counsel has a rational basis.

III. Service Award to Plaintiff

The Court finds reasonable a service award of $7,500.00 for named plaintiff Amandou Barry and $2,500.00 for named plaintiff Gungor Akcelik for work performed on behalf of the class. These awards will be paid from the Settlement Fund.

Such awards are common in class action cases and are important to compensate plaintiff for the time and effort

expended in assisting the prosecution of the litigation, the
risks incurred by becoming and continuing as a litigant and any
other burdens sustained by the plaintiff.  See Parker v. Jekyll &
Hyde Entm't Holdings, LLC, No. 08 Civ. 7670), 2010 WL 532960, at
*1 (S.D.N.Y. Feb. 9, 2010) ("Enhancement awards for class
representatives serve the dual functions of recognizing the risks
incurred by named plaintiffs and compensating them for their
additional efforts"); McMahon v. Oliver Cheng Catering and
Events, LLC, No. 08 Civ. 8713, 2010 U.S. Dist. LEXIS 18913, 2010
WL 2399328, at *8-9 (S.D.N.Y. Mar. 3, 2010).  See also Roberts v.
Texaco, Inc., 979 F. Supp. 185, 200-01 (S.D.N.Y. 1997) ("The
guiding standard in determining an incentive award is broadly
stated as being the existence of special circumstances including
the personal risk (if any) incurred by the plaintiff-applicant in
becoming and continuing as a litigant, the time and effort
expended by that plaintiff in assisting in the prosecution of the
litigation or in bringing to bear added value (e.g., factual
expertise), any other burdens sustained by that plaintiff in
lending himself or herself to the prosecution of the claim, and,
of course, the ultimate recovery").

According to plaintiffs' counsel, the named plaintiffs have
engaged in almost four years of litigation, appeared for
depositions, responded to discovery, met with counsel numerous
times, stayed in regular contact with Class Counsel regarding the
progress of the litigation and the underlying facts of the
allegations and helped to effectuate the settlement.  See DE 114-

1 (Mem.) at 14-15.  Although the better practice would have been

for counsel to submit affidavits or declarations from the named

plaintiffs to describe the efforts they expended in this

litigation, based on my familiarity with the case and review of

the billing records of counsel with respect to work they

performed that involved contact with the named plaintiffs, I find

the submissions are sufficient to justify the amount of the

service awards sought.


VI.  Attorneys' Fees

     Attorneys who create a common fund from which members of a

class are compensated are entitled to "a reasonable fee--set by

the court--to be taken from the fund."  Goldberger v. Integrated

Resources, Inc., 209 F.3d 43, 47 (2d Cir. 2000) (internal

citation omitted).  "What constitutes a reasonable fee is

properly committed to the sound discretion of the district

court[.]"  Goldberger, 209 F.3d at 47.  Fees may be awarded under

either the lodestar or percentage of the funds methods, but in

this Circuit, the percentage method is the "trend."  McDaniel v.

County of Schenectady, 595 F.3d 411, 417 (2d Cir. 2010); Wal-Mart

Stores, 396 F.3d at 121.  As one court in this Circuit noted:

     The percentage method directly aligns the interests of
     the class and its counsel and provides a powerful
     incentive for the efficient prosecution and early
     resolution of litigation, which clearly benefits both
     litigants and the judicial system.  The percentage
     approach is also the most efficient means of rewarding
     the work of class action attorneys, and avoids the
     wasteful and burdensome process - to both counsel and
     the courts - of preparing and evaluating fee petitions,

> which the Third Circuit Task Force described as
> "cumbersome, enervating, and often surrealistic."

In re Lloyd's American Trust Litig., No 96 Civ. 1262, 2002 WL
31663577, at *25 (S.D.N.Y. Nov. 26, 2002).  In addition, the
percentage method is intended to mirror the private marketplace
where contingent fee attorneys typically negotiate percentage fee
arrangements with their clients.  See In re Am. Bank Note
Holographics, Inc., 127 F. Supp. 2d 418, 432 (S.D.N.Y. 2001).
Although the Court has discretion to award attorneys' fees based
on the lodestar method or the percentage-of-recovery method,
McDaniel, 595 F.3d at 417, in wage and hour class action
lawsuits, public policy favors a common fund attorneys' fee
award.  See Frank v. Eastman Kodak Co., 228 F.R.D. 174, 189
(W.D.N.Y. 2005).  See also deMunecas, 2010 WL 3322580, at *8
(same).

Fee awards in wage and hour cases are meant to "'encourage
members of the bar to provide legal services to those whose wage
claims might otherwise be too small to justify the retention of
able, legal counsel.'"  deMunecas, 2010 WL 3322580, at *8
(quoting Sand v. Greenberg, No. 08 Civ. 7840, 2010 WL 69359, at
*3 (S.D.N.Y. Jan. 7, 2010).  The FLSA and New York Labor Law are
remedial statutes, the purposes of which are served by adequately
compensating attorneys who protect wage and hour rights.  See
McMahon, 2010 WL 2399328, at *7.

Moreover, where relatively small claims can only be
prosecuted through aggregate litigation, and the law relies on

prosecution by "private attorneys general," attorneys who fill the private attorney general role must be adequately compensated for their efforts.  See Campos, 2011 WL 9530385, at *7.  "If not, wage and hour abuses would go without remedy because attorneys would be unwilling to take on the risk."  Id. (citing deMunecas, 2010 WL 3322580, at *8).

Common fund recoveries are contingent on a successful litigation outcome.  See Campos, 2011 WL 9530385, at *7.  Such "'contingency fees provide access to counsel for individuals who would otherwise have difficulty obtaining representation . . . [and] transfer a significant portion of the risk of loss to the attorneys taking a case.  Access to the courts would be difficult to achieve without compensating attorneys for that risk.'" deMunecas, 2010 WL 3322580, at *8 (quoting In re Abrams, 605 F.3d 238, 245-46 (4th Cir. 2010)).  Many individual litigants, including the class members here, "cannot afford to retain counsel at fixed hourly rates, . . . yet they are willing to pay a portion of any recovery they may receive in return for successful representation."  Wells v.  Sullivan, 907 F.2d 367, 371 (2d Cir. 1990).  "[P]laintiffs may find it difficult to obtain representation if attorneys know their reward for accepting a contingency case is merely payment at the same rate they could obtain risk-free for hourly work, while their downside is no payment whatsoever."  In re Abrams, 605 F.3d at 246.

Regardless of which method is utilized, courts in this Circuit must consider the following factors in determining what

constitutes a reasonable fee: (1) the time and labor expended by counsel; (2) the magnitude and complexities of the litigation; (3) the risk of the litigation; (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations.  See Goldberger, 209 F.3d at 50.

Here, Class Counsel risked time and effort and advanced costs and expenses, with no ultimate guarantee of compensation, and is therefore entitled to attorneys' fees.  Although this case is not as complex as a large scale national class action, plaintiffs' claims involved questions of whether the work performed was protected under the applicable wage laws and the number of hours that they worked.  The case involved hundreds of employees who were employed over a six-year period, and Class Counsel engaged in substantial pre-certification discovery, including depositions of all parties, written and paper discovery, and audits.  DE 114-1 at 6.  Class Counsel also appeared at numerous conferences before the Court, engaged in formal mediation, as well as several settlement conferences.  Id.

Additionally, counsel was well qualified to conduct this litigation.  Having appeared before me in prior actions and based on my observations of his knowledge of the case, the legal issues at hand, involvement in settlement discussions and the handling of the settlement thereafter, I find the counsel was qualified to conduct this litigation.

Plaintiffs request attorneys' fees in the amount of

-30-

$200,000.00, pursuant to the Settlement Agreement, from the Settlement Fund. Id. at 6-7. Counsel state that they expended more than 1,154 hours litigating this case through settlement, which would total more than $388,588.00 in fees, and does not include time that will be devoted to administration of the settlement process. See DE 114-1 at 6-7; Klein Decl. at ¶¶ 26-27. Moreover, the fact that Class Counsel's fee award will not only compensate them for time and effort already expended, but for time that they will be required to spend administering the settlement going forward also supports their fee request. See deMunecas, 2010 WL 3322580, at *10.

Plaintiffs' counsel has submitted billing records demonstrating that they have incurred attorneys' fees of $254,211.02 for Virgina and Ambinder and $134,347.92 for Leeds Brown. See DE 114-6, 114-7 (billing records). Accordingly, the fee award counsel seeks is almost $190,000 less than the amount they could have charged a client according to the lodestar method.

The Court notes that some of the rates claimed for several of the attorneys who worked on the case fall in higher range than is commonly awarded in this district. See ct. docs. 114-6 at 46, 114-7 at 30. Named partners billed at an hourly rate of $525, but courts in this district have generally awarded fees in the range of $300 to 400. See, e.g., Chen v. JP Standard Constr. Corp., No. 14-CV-1086, 2016 WL 2909966, at *15 (E.D.N.Y. Mar. 18, 2016), report and recommendation adopted, No. 14CV1086, 2016 WL

-31-

2758272 (E.D.N.Y. May 12, 2016) ("reasonable hourly rates for partners in wage and hour cases in this District typically range from $300 to $450) (citation omitted); Morales v. B&M Gen. Renovation Inc., No. 14 CV 7290, 2016 WL 1266624, at *11 (E.D.N.Y. Mar. 9, 2016) ("the prevailing hourly rate for partners in this district is between $300 and $400"), report and recommendation adopted, 2016 WL 1258482 (E.D.N.Y. Mar. 29, 2016); Marshall v. Deutsche Post DHL, No. 13-CV-1471, 2015 WL 5560541, at *9 (E.D.N.Y. Sept. 21, 2015) ("the prevailing hourly rate for partners in this district ranges from $300.00 to $400.00, and a reasonable hourly rate for a senior associate ranges from $200 to $300"). See also Perez v. Queens Boro Yang Cleaner, Inc., No. 14-CV-7310, 2016 WL 1359218, at *8 (E.D.N.Y. Mar. 17, 2016), report and recommendation adopted sub nom. Perez v. Yang Cleaners, No. 14 CV 7310, 2016 WL 1337310 (E.D.N.Y. Apr. 5, 2016) (collecting cases).  In addition, some of the hours billed could be challenged as duplicative or otherwise excessive.  However, even if the hourly rates were reduced in accordance with the ranges commonly awarded in this district and some portion of the time claimed disallowed, the reduced amount of fees sought pursuant to the settlement agreement are still below would have been awarded according to the lodestar method.  For example, reducing the hourly rate of the partners spent substantial time on this case from $525.00 to $400.00 per hour would reduce the billable fees by $13,162.50.  Additionally, reducing the hourly rate of the lead associates on this case, Ms. Klein and Mr.

Tompkins, from $395.00 to $300.00 per hour would reduce the billable fees by $51,678.10.  Taken together, such a reduction would reduce the total billable fees by $64,840.60 and decrease the lodestar amount from $388,588.00 to $323,747.40 -- substantially more than the $200,000.00 requested.  Similarly, a further reduction of 10% in hours claimed would result in an amount that is greater than counsel's request.  Thus, this Court finds that counsel's requested fee of $200,000.00, is reasonable under the circumstances of this case.

<u>CONCLUSION</u>

For the foregoing reasons, the settlement is approved. Accordingly, for all the foregoing reasons, plaintiffs' motion for approval of the class settlement (DE 114) is granted as follows:

1.  Pursuant to Fed.R.Civ.P. 23(a) and (b)(3), the following sub-classes are certified for settlement purposes:  (a) an FLSA Claimant with New York Labor Law Class consisting of plaintiffs and all persons who had filed consents to join the FLSA collective and who had performed work for S,E,B, from October 19, 2005 through May 6, 2009; and (b) a UC Settlement Class consisting of all current and former persons who performed work for defendant S.E.B. as undercover security personnel from October 19, 2005 through the May 14, 2014, excluding the Plaintiffs, all FLSA Claimants, all administrative, executive, supervisory, office and managerial positions.

2.   The Settlement Agreement, as amended, is unconditionally approved.

3.   The "Effective Date" of the settlement shall be fourteen days following the last date this Final Approval Order approving this Agreement is appealable, if no appeal is filed.  If an appeal is taken, Section 1.15 of the Settlement Agreement governs.

4.   In accordance with the terms of the Settlement Agreement and after the Effective Date of this Order, the remaining Settlement Funds sahll be distributed as follows: (a) $56,630.50 to UC Class Claimants in accordance with the allocation plan in the Settlement Agreement; (b) $200,000.00 to class counsel as reimbursement for profession costs and fees; and (c) service awards of $7,500.00 to named plaintiff Amandou Barry and $2,500.00 for named plaintiff Gungor Akcelikll.

5.   Without affecting the finality of this Order in any way, this Court hereby retains jurisdiction over consummation and performance of the Agreement.

6.   The Clerk of the Court is respectfully requested to close this case.

**SO ORDERED.**

Dated:    Brooklyn, New York
          March 13, 2017

                                   /s/
                                   _____
                                   MARILYN DOLAN GO
                                   UNITED STATES MAGISTRATE JUDGE